UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANGELA W.,

      Plaintiff,

 v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

      Defendant.

CASE NO. C18-5808-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1975.[1] She completed the tenth grade of high school and has no past relevant work. (AR 31, 51-52, 201.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff filed an SSI application on November 12, 2014, alleging disability beginning July 12, 2007. (See AR 15.) The application was denied at the initial level and on reconsideration.

On March 16, 2017, ALJ Allen Erickson held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 43-88.) At hearing, plaintiff amended the alleged onset date to November 12, 2014, the date of her SSI application. (AR 49-50.) On July 19, 2017, the ALJ issued a decision finding plaintiff not disabled. (AR 15-33.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on August 7, 2018 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date.

At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's cervical spine degenerative disc disease, migraine headaches, major depressive disorder, post-traumatic stress disorder (PSTD), and generalized anxiety disorder severe. He found several other diagnoses/conditions not severe, including substance abuse disorder (methamphetamine and inhalants) in full, sustained remission since late 2014. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work, but with only occasional climbing of ladders/ropes/scaffolds, crawling, overhead reaching bilaterally, and exposure to vibration, extreme cold temperatures, bright light, loud noise, and concentrated levels of dust, fumes, odors, gases, and poor ventilation. Plaintiff could understand, remember, and apply short, simple instructions, while performing only routine, predictable tasks; cannot work in a fast-paced production type environment; can make simple, work-related decisions and have exposure to only few workplace changes; and is limited to only occasional interaction with the public and co-workers. She had no past relevant work to consider.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as an electrical accessories assembler, marker, and hotel/motel housekeeper.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of

which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in rejecting a medical opinion and that the error was harmful. She requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Medical Opinion</u>

Plaintiff avers error in the ALJ's rejection of the opinion of examining psychologist Dr. Michael Jenkins. Because the record contained contradictory opinions from examining psychologist Dr. Lezlie Pickett and non-examining psychologists Drs. John Wolfe and Dan Donahue, the ALJ could reject the opinion of Dr. Jenkins only with "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). As examining psychologists, the opinions of Drs. Jenkins and Pickett were, as a general matter, entitled to more weight than the opinions of Drs. Wolfe and Donahue. *Id*. at 830.

On November 7, 2014, Dr. Jenkins performed a consultative psychological evaluation of plaintiff on behalf of the Washington Department of Health and Human Services (DSHS). (AR 303-07.) He assessed marked limitations in performing activities in a schedule, maintaining regular attendance, and being punctual; adapting to changes; communicating and performing effectively; completing a normal work day and week without interruptions from symptoms; and maintaining appropriate behavior. (AR 305-06.) Dr. Jenkins stated: "Client appears to be struggling with significant depression and anxiety symptoms, along with panic attacks, fear of which can limit her activities, and PTSD symptoms related to traumatic events in her childhood." (*Id*.)

The ALJ found the opinion of Dr. Jenkins and an April 2013 opinion of DSHS consultative evaluator Dr. Dana Harmon as pertaining to plaintiff's reported symptoms/ functioning prior to the relevant adjudicatory period, before the amended alleged onset date. (AR 30.) He further found the opinions to "rely largely on claimant's self-reported severe symptoms during that period when she was still using methamphetamines and/or had recently used (as per her testimony and report to Dr. Pickett indicating sobriety as of her November 2014 disability application date)." (*Id*.) The also found the opinions of marked impairment lacked "substantial support from other evidence of record, notably, Dr. Pickett's more recent evaluation, finding that claimant has no 'cognitive, memory, or mental health difficulties' that would preclude her from all employment." (*Id*.)

Plaintiff avers error in the rejection of this opinion as predating the amended alleged onset date. First, the amendment occurred in recognition of the fact SSI benefits are not payable prior to the protective date of filing. (AR 49-50 ("We do want to amend the onset date to the protective filing date, this being a Title 16 claim, there is no benefits that can be paid prior to the filing [date], so it's really moot to talk about [that].")); 20 C.F.R. § 416.335 (SSI not payable prior to the month following the month of the application). Second, the report from Dr. Jenkins predated the November 12, 2014 amended onset date by only five days.

The Court agrees the date of Dr. Jenkins's report does not serve as a persuasive reason to reject his opinion. However, this error is properly deemed harmless given two specific and legitimate reasons provided for rejecting the opinion of Dr. Jenkins. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case.") (quoted source omitted);

*Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where ALJ provides specific reasons supporting an assessment and substantial evidence supports the conclusion, error may be deemed harmless).

A.   <u>Self-report During Period of Substance Use</u>

The ALJ found the November 2014 opinion of Dr. Jenkins to rely largely on plaintiff's self-reported severe symptoms during the period in which she was still using or had recently used methamphetamine. He pointed to plaintiff's testimony and the report from Dr. Picket as indicating sobriety as of her November 2014 disability application date. (*See* AR 54, 656 (February 29, 2016: "Meth and inhalants were her primary drugs of choice. She reported that she was dependent on those substances throughout the past 18 years, but 'really started trying to get clean and sober about a year and a half ago since I applied for SSI.'"))

An ALJ does not provide specific and legitimate reasons for rejecting an examining physician's opinion "by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (noting nothing in record to suggest physician disbelieved claimant's description of symptoms or relied on those descriptions more than his own clinical observations). However, the opinion of a doctor "'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (quoted source omitted).

The ALJ found plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the record (AR 22-27), a conclusion plaintiff does not contest. Plaintiff does, however, deny Dr. Jenkins relied in large part on her self-report and asserts

ORDER
PAGE - 6

justification of his opinion with an abundance of objective findings. Dr. Jenkins observed "periods of distressed affect and tearfulness" and "significant agitation . . . throughout the interview with nervous tension, hand-wringing, and shifting posture." (AR 304.) He administered the Beck Depression Inventory II (BDI-II) and Burns Anxiety Inventory (BAI), with scores suggesting severe depression and anxiety symptoms, as well as the Rey 15-Item Memory Test (RMT), with one score suggesting adequate effort. (AR 306.) On mental status examination (MSE), Dr. Jenkins noted, in relevant part, grooming falling somewhat below expectations; clear speech with signs of rapid shifts in ideas and some responses straying from direct questions and with frenetic energy; signs of nervous tension, hand wringing, frequent shifts in posture, and demonstrative gesturing; somewhat restricted and distressed affect through much of interview, punctuated by periods of dynamic and animated affect; and memory difficulty in recalling key details from personal history, concentration difficulty in responding directly with complete answers at times, and somewhat impaired judgment. (AR 307.)[2]

Plaintiff also denies substantial evidence support for the finding Dr. Jenkins rendered his opinion when plaintiff was using or had recently used methamphetamine. She notes Dr. Jenkins opined her impairments were not the result of alcohol or drug use within the past sixty days. (AR 306.) Nor did he recommend chemical dependency assessment or treatment. (*Id.*) Plaintiff argues the ALJ erred in ignoring this opinion by failing to discuss or reject it. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or

---

[2] Other findings on MSE included adequate dress and eye contact, generally cooperative behavior, thought process and content, orientation, perception, fund of knowledge, and abstract thought within normal limits, and fair insight. (AR 307.) Also, while plaintiff describes the RMT results as "a reliability indicator which demonstrated 'adequate effort'" (Dkt. 8 at 4), only the results on the recall portion of the test suggested adequate effort. "[S]cores on the recognition portion of this measure may indicate unwillingness to consistently engage with assessment procedures and preform to full potential. However, it is important to note that high level of agitation and anxiety displayed by this client which may have contributed to her poor performance on this measure." (AR 306.)

ORDER
PAGE - 7

assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.")

The ALJ's explanation of his decision to reject the opinion of Dr. Jenkins would have benefited from a more detailed discussion. However, plaintiff's assignment of error requires that the Court ignore a critical issue with plaintiff's reporting to Dr. Jenkins, as well as the ALJ's lengthy discussion of the record preceding the assessment of the medical opinions. The Court considers the ALJ's decision as a whole, not solely the portion of the decision addressing a physician's opinion, the weight assigned the opinion, and the reasons for the weight assignment. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five.") (internal citation omitted). Moreover, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755. Indeed, even when explained with "less than ideal clarity," the ALJ's decision must be upheld when the path of reasoning "may reasonably be discerned." *Molina*, 674 F.3d at 1121 (internal quotation marks and quoted sources omitted). In this case, the Court finds the ALJ's reasoning apparent and the conclusion supported by substantial evidence.

In the evaluation with Dr. Jenkins, plaintiff denied current alcohol or drug use, and reported she regularly used both methamphetamine and an inhalant from about 1999 until 2013. (AR 303.) She "report[ed] stopping using all drugs after experiencing significant physical health problems during a night of increased drug use in 2013." (AR 304.) Dr. Jenkins identified methamphetamine

and inhalant dependence in early full remission (AR 305) and opined plaintiff's impairments did not result from alcohol or drug use during the past sixty days (AR 306). However, rather than providing support for Dr. Jenkins's opinion or reflecting the absence of a proper evaluation by the ALJ, these aspects of the report from Dr. Jenkins undermine the conclusions he reached and support the ALJ's interpretation of a substantial reliance on plaintiff's self-report when she was still using or had recently used methamphetamine.

In assessing plaintiff's symptom testimony, the ALJ considered that the evaluation with Dr. Jenkins occurred when plaintiff was still using or had recently used methamphetamine and contrasted this fact with plaintiff's testimony and reporting to Dr. Pickett. (AR 25.) Specifically, in February 2016, plaintiff reported to Dr. Pickett "she had 'really started trying to get clean and sober about a year and a half ago since I applied for SSI' [which would have been around 2014], noting that she 'had one slip, but that was it.'" (*Id.* (quoting AR 656).)

The ALJ further addressed issues with plaintiff's reporting. While complaining to Dr. Pickett of severe panic attacks, anxiety, and long-term depression with some suicidal thoughts, plaintiff reported she was not seeing any provider for mental health counseling or therapy and had only recently obtained medications for mood and sleep issues. (AR 25.) While plaintiff testified to being a recluse and mostly staying in her apartment (AR 22), records reflected her report she can "'go anywhere' with her mother," manages the fourplex apartment complex where she lives, and walks around the parking lot and regularly engages with neighbors and their children (AR 26-27, 903).

The ALJ also considered Dr. Pickett's discussion of plaintiff's inconsistent reporting and the impact of substance use on her reporting, and found evidence of secondary gain motives. (AR 27.) When asked by Dr. Pickett to describe how her mental symptoms affected her on a daily

basis, plaintiff "'hemmed and hawed for quite some time,'" then stated:

> "Well, I do whatever I want to do. I can't say that they stop me from doing whatever I want to do. But I have to have some kind of mental health something or I won't get Disability because I can't get it just for health problems. My doctor isn't going to agree to do that, so I wanted to add the other stuff . . . like worrying and maybe having a panic attack and being abuse[d] as a child. That should count, doesn't it?"

(AR 655.) Dr. Pickett noted plaintiff was not able to describe how the alleged symptoms were negatively impacting her ability to function or complete activities of daily living. She remarked that plaintiff's "'self-report of mental health symptoms is inconsistent across providers, raising questions regarding the validity of her self-report." (AR 27, 659.) She further noted that both methamphetamine and inhalants "can cause symptoms that mimic those of actual mental health disorders . . . often causing misdiagnoses of mental health issues when providers are unaware of the extent of a person's substance abuse issues' or its impact on mental health." (AR 660.) The ALJ found plaintiff's own statements to cast doubt about the extent to which her reported symptoms truly limit her functioning. (AR 27.)

It is apparent the ALJ considered the fact Dr. Jenkins lacked accurate information and made observations and findings on examination without knowledge of plaintiff's ongoing or recent use of methamphetamine and inhalants. Given that a significant portion of the evidence forming the basis of Dr. Jenkins's conclusions was dependent on plaintiff's reporting, the ALJ drew a reasonable inference in finding substantial reliance on plaintiff's self-report during a period of current or recent substance use. *See, e.g.*, *Hawkins v. Astrue,* No. 3:11-CV-05701-KLS, 2012 U.S. Dist. LEXIS 56072 at *12 (W.D. Wash. April 19, 2012) (BDI-II "is based in significant part on plaintiff's own self-reporting."); *Feeney v. Colvin*, No. 2:12-cv-2769, 2014 U.S. Dist. LEXIS 14391 at *14 (E.D. Cal. Feb. 5, 2014) (BDI-II "is a multiple-choice self-report inventory[]" and

"cannot be said to represent objective clinical findings.") It is further reasonably inferred the ALJ considered the impact of plaintiff's substance use on her presentation and testing performance in the evaluation with Dr. Jenkins as compared to the same with Dr. Pickett. (*See* AR 25, 30 ("Additionally, the findings of marked limitations are not consistent with the claimant's regular psychiatric screenings during the course of medical treatment, noted above (e.g., mental status generally within normal limits, as well as her February 2016 consultative evaluation with Dr. Pickett."))

The ALJ, in sum, reasonably concluded Dr. Jenkins's assessment of marked limitations relied in significant part on plaintiff's self-report during a period of time in which she was using or had recently used methamphetamine. Plaintiff fails to undermine the substantial evidence support for this specific and legitimate reason for rejecting the medical opinion.

B.  Other Evidence of Record

The ALJ found the opinion of Dr. Jenkins to "lack substantial support from other evidence of record, notably, Dr. Pickett's more recent evaluation, finding that claimant has no 'cognitive, memory, or mental health difficulties' that would preclude her from all employment." (AR 30.) Contrary to plaintiff's contention (*see* Dkt. 8 at 5 and Dkt. 10 at 4-5), this does not reflect that the ALJ rejected the opinion of Dr. Jenkins based solely on the fact the record contained a contradictory medical opinion. The ALJ explicitly found the opinion of Dr. Jenkins to lack substantial support from other evidence in the record and merely identified the evaluation from Dr. Pickett as one example of inconsistent evidence. This serves as a specific and legitimate reason for rejecting the opinion of Dr. Jenkins. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions); 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with

ORDER
PAGE - 11

the record as a whole, the more weight [the ALJ] will give to that medical opinion.").

Nor does plaintiff undermine the substantial evidence support for the ALJ's conclusion. Instead, review of the decision as a whole reveals the ALJ's extensive and detailed discussion of the inconsistent evidence of record.

As related to mental health symptoms, the ALJ found plaintiff's presentation and performance on mental exams and treatment notes did not support allegations of debilitating mental symptoms or limitations. (AR 24.) Her regular exams indicated mostly normal or benign status overall despite the presence of some symptoms, for example, finding plaintiff in no acute distress, alert and fully oriented, with appropriate/normal mood and affect, normal behavior, thought content, insight, and judgment, and no indications of cognitive impairment. (*Id*. (also specifically describing a February 2016 emergency room evaluation with plaintiff presenting as alert, in no distress, and exhibiting normal mood and affect and appropriate interactions).)[3]

The record indicated plaintiff went to mental health counseling for periods in 2014 and 2015, with session notes mostly reflecting assessments for depression and/or anxiety with occasional panic attacks reportedly worsening after plaintiff stopped using drugs. (AR 24-25.) The record did not, however, "reflect major mental deficits or limitations; they note reported improvement on medications/treatment, and there does not appear to be anything particularly alarming noted by treating providers." (AR 25.) For instance, in March 2015, a treating provider noted plaintiff was anxious, with labile mood and affect, but also alert, fully oriented, attentive and cooperative, had hygiene within normal limits, speech without pressure, thoughts adequately organized and content reality based, insight and judgment normal, and intact recent and long-term memory. Plaintiff reported sleeping better and that medication seemed to help with her anxiety.

---

[3] With some exceptions, the Court hereinafter omits the ALJ's numerous citations to the record.

Subsequent MSEs with counselors between May and August 2015 indicated similar findings.

After contrasting the opinion evidence from Drs. Harmon and Jenkins and from Dr. Pickett as falling within and after the period plaintiff ceased using substances, the ALJ described the content of Dr. Pickett's report in detail. (*See* AR 25-27 and AR 653-61.) In addition to the portions of the report mentioned above, the ALJ noted that, on MSE with Dr. Pickett, plaintiff gave "the impression of being 'somewhat scatter-brained and flighty,' going off on a tangent at times, but she was 'easily redirected' back to topics and tasks." (AR 25, 657.) Examination findings were otherwise generally normal, including clear, logical, goal-directed thoughts, positive self-statements, excellent eye contact, attentive, and with no evidence of impaired concentration. On testing, plaintiff had intact memory, successfully completed serial subtractions and simple math calculations, followed simple and complex instructions accurately and without apparent hesitation or difficulty, had intact cognitive processes, maintained concentration and focus, was not distractible, and had formal memory function testing (WMS-IV) scores within the average range, indicating no impairment. (AR 25-26, 657-60.)

Dr. Pickett found plaintiff's mental health stable, with plaintiff presenting "in a very positive, friendly, optimistic demeanor'" and without active symptoms of a current major mood or thought disorder, and not meriting a formal diagnosis of any major mood or thought disorder. (AR 26, 659-60.) As plaintiff had recently obtained medications, her current stability could have been the by-product of her current medication regimen or her maintained sobriety. As stated above, Dr. Pickett noted both methamphetamine and inhalants "can cause symptoms that mimic those of actual mental health disorders . . . often causing misdiagnoses of mental health issues when providers are unaware of the extent of a person's substance abuse issues' or its impact on mental health." (AR 660.) Dr. Pickett found plaintiff's prognosis good, particularly if she remained

abstinent, and reported: "'specific to mental health functioning, [claimant] is functioning at a fairly high level and there appears to be no reason why this level of functioning would decrease in the future, unless there is some future issue with a major health issue, a loss of motivation to succeed, or re-engagement in substance abuse.'" (AR 26, 660.)[4]

The ALJ additionally noted the evidence of minimal treatment received for mental health complaints, including counseling for only about a year and a half and some prescribed medications taken intermittently. (AR 26-27.) The ALJ, finally, found evidence of reported activities and demonstrated functioning inconsistent with more limiting symptoms. (AR 27.) Plaintiff lived alone in an apartment, managed a fourplex, attended to her personal care and medications, fixed her own meals daily, did laundry, tended a garden, and cared for her cat. She takes public transit, shops in stores, and attends medical appointments, socializes with neighbors, gardens with neighbor children, and spends time going out with her mother, including shopping, going to Goodwill, getting pedicures, and going to the movies. (*See also id*. and AR 903 (reporting her activity to a nutritionist in July 2016: "Not a whole lot. Manages 4-plex, so mingles and walks parking lot, picks up trash around the building, some gardening. Used to walk frequently, but anxiety stops her.")) This activity and demonstrated functioning further supported plaintiff's ability to perform a limited range of light, unskilled work involving simple, routine instructions and tasks with only occasional social interaction.

---

[4] Dr. Pickett also found plaintiff's current hold on stability and abstinence appeared "'somewhat fragile'", that she "'could be easily destabilized by high levels of stress'", and advised therapy. (AR 26, 659-60.) She opined plaintiff's impairments did not preclude working, but plaintiff would likely benefit from vocational training and assistance in finding employment, and employment in a supportive environment that did not require her to deal constantly with the public in a highly demanding/multi-tasking position would be helpful. (*Id*.) The ALJ gave the opinion of Dr. Pickett partial weight, with less weight assigned to the likelihood plaintiff could become emotionally destabilized and would benefit from supportive employment, finding it lacked corroborating medical evidence and seemed inconsistent with the generally normal findings on examination. (AR 29.) Plaintiff notes but does not challenge the ALJ's partial acceptance of Dr. Pickett's opinion. (*See* Dkt. 8 at 5, n.1.)

ORDER
PAGE - 14

The ALJ, in sum, provided substantial evidence support for his conclusion the assignment of marked limitations by Dr. Jenkins lacked substantial support from other evidence in the record, including, but not limited to, the more recent evaluation from Dr. Pickett. Plaintiff does not demonstrate error in this specific and legitimate reason for rejecting the opinion of Dr. Jenkins.

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>17th</u> day of April, 2019.

Mary Alice Theiler
United States Magistrate Judge